UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA    )
    )
    v.    )    No. 1:15-cr-12-01-SM
    )
PANOS ELIOPOULOS    )
_____)

U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

MAR 1 0 2016

**FILED**

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States of America, by its attorney, Emily Gray Rice, United States Attorney for the District of New Hampshire, and the defendant, Panos Eliopoulos, and his attorney, Charles J. Keefe, Esquire, enter into the following Plea Agreement.

1.   <u>The Plea and Offense.</u>

The defendant, Panos Eliopoulos, agrees to plead guilty to Count One of a Superseding Information which charges the defendant with Causing Misbranded Drugs to be Introduced into Interstate Commerce, in violation of Title 21, U.S.C. §331(a), §333(a)(1).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in section 6 of this agreement.

2.   <u>The Statute and Elements of the Offense.</u>

Causing Misbranded Drugs to be Introduced into Interstate Commerce- [21 U.S.C. § 331(a), §333(a)(1)].

Title 21, United States Code, Section 331(a) provides:

The following acts and the causing thereof are prohibited:

(a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco, product, or cosmetic that is adulterated or misbranded.

2

The elements of the offense are:

First, that the defendant held a position of responsibility in the company (named in the Superseding Information);

Second, that the defendant introduced into interstate commerce or delivered for introduction into interstate commerce the drug described in Count One of the Superseding Information namely, PB- 22; and

Third, that this drug was misbranded at the time of its introduction or delivery for introduction.

This instruction is based upon the Federal Jury Practice and Instructions, Section 63:03.

3.   <u>Offense Conduct</u>.

The defendant stipulates and agrees that if this case proceeded to trial, the United States would prove the following facts beyond a reasonable doubt:

According to records from the State of New Hampshire Secretary of State, "Phat Stuff" is a trade name that has been registered since November 2011 to the defendant and his wife, Katie Eliopoulos, as a retail business located at 84 Main Street, Keene, New Hampshire.

In July 2013, the United States Drug Enforcement Administration (DEA) received information that drug paraphernalia and smokable synthetic cannabinoid (SSC's) products were being sold from Phat Stuff.

Accordingly, in early August 2013, a DEA Special Agent (SA) entered Phat Stuff and observed it to be a retail establishment that appeared to be open to the public. The interior of the store contained numerous glass display cases, some of which housed glass pipes and bongs, which are designed primarily to introduce controlled substances into the body.   In addition, the DEA SA observed another glass display case which contained numerous foil packages marked with various

3

names which the DEA SA believed, based his training and experience, contained synthetic cannabinoids. The interior of the premises also had a cash register and at that time there was a young male behind the cash register who the DEA SA believed to be an employee. ~~The DEA SA~~ did not observe any tobacco or tobacco products offered for sale within the store. *[handwritten initials and dates]*

On August 9, 2013, a DEA cooperating witness (CW), under the observation of agents, entered Phat Stuff.  The CW exited a short time later with four foil packets labeled "Griffon, scented deodorizer, melon berry, not for consumption," and a small glass pipe.

A debriefing of the CW and a review of the recording of that meeting revealed that CW entered Phat Stuff and met with a white male who appeared to be an employee. The CW asked the male for "Dreaded," which had been a brand of suspected SSC. The male told the CW that Phat Stuff longer carried "Dreaded" and then showed CW a product called "Griffon."  The CW asked what the male thought of the product and the male replied that he liked it. The CW asked for three packets of the Griffon and then told the male that the CW also needed a pipe.   The CW selected a small glass pipe and paid $28 U.S. Currency for it.   The CW selected a fourth packet of Griffon and paid $99.97 U.S. Currency.   The male placed that money in the cash register.

The substances contained in the foil packets were sent to a DEA Laboratory, which determined that the substances contained in the packages labeled "Griffon" contained quinolin-8-yl 1-pentyl-1H-indole-3-carboxylate (PB- 22; QUPIC).[1]

4.  Penalties.

The defendant understands that the penalties for the offense include:

      A.     Count One - a maximum prison sentence of one year;

      B.     Count One-a maximum fine of $1,000.00 (21 U.S.C. §333);
      and

---

[1] At the time of this transaction, DEA scientists determined that PB-22 was an analogue of JWH-018, a Schedule I controlled substance.   PB-22 was temporarily placed into Schedule I on February 10, 2014, after the date of this transaction.

C.      A term of supervised release of not more than one year. The defendant
        understands that the defendant's failure to comply with any
        of the conditions of supervised release may result in revocation of
        supervised release, requiring the defendant to serve in prison all or part of
        the term of supervised release, with no credit for time already spent on
        supervised release (18 U.S.C. §3583).

The defendant also understands that he will be required to pay a special assessment of

$25 at or before the time of sentencing pursuant to 18 U.S.C. § 3013; and that the Court may

order him to pay restitution to the victims of the offense, pursuant to 18 U.S.C. § 3663 or §

3663A.

    5.   Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case

and that the Court is required to consider the United States Sentencing Guidelines as advisory

guidelines.    The defendant further understands that the defendant has no right to withdraw the

defendant's guilty plea if the applicable advisory guideline range or the defendant's sentence is

other than the defendant anticipated, except as expressly provided in this Plea Agreement.

The defendant also understands that the United States and the United States Probation

Office shall:

    A.      advise the Court of any additional, relevant facts that are presently known or may
            subsequently come to their attention;

    B.      respond to questions from the Court;

    C.      correct any inaccuracies in the pre-sentence report;

    D.      respond to any statements made by the defendant or the defendant's counsel to a
            probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address

the Court with respect to an appropriate sentence to be imposed in this case.

5

The defendant is aware that any estimate of the probable sentence or the probable sentencing range relating to the defendant pursuant to the advisory Sentencing Guidelines that the defendant may have received from any source is only a prediction and not a promise, and is not binding on the United States, the Probation Office, or the Court, except as expressly provided in this Plea Agreement.

In addition to the other penalties provided by law, the Court may also order that the defendant make restitution under 18 U.S.C. § 3663.

6.   Stipulations and Other Agreements.

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant have stipulated to the following:

1.  The government agrees to recommend a sentence of a term of probation for one year and;

2.  Upon entry of the defendant's guilty plea to Count One of the Superseding Information, the United States will move to dismiss, without prejudice, the pending indictment in United States v. Katie Eliopoulos (1:15-cr-12-02-SM).

This stipulation is intended by the parties to be "binding" under Fed. R. Crim. P. 11(c)(1)(C).   By using the word binding the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty plea.

The parties are free to make recommendations with respect to fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7.   Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the

defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense.   The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.    fails to admit a complete factual basis for the plea at the time the defendant is sentenced or at any other time;

B.    challenges the United States' offer of proof at any time after the plea is entered;

C.    denies involvement in the offense;

D.    gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.    fails to give complete and accurate information about the defendant's financial status to the Probation Office;

F.    obstructs or attempts to obstruct justice, prior to sentencing;

G.    has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.    fails to appear in court as required;

I.    after signing this Plea Agreement, engages in additional criminal conduct; or

J.    attempts to withdraw the plea of guilty.

If the defendant's offense level is sixteen or greater, and the defendant has assisted the United States in the investigation or prosecution of the defendant's own misconduct by timely notifying the United States of the defendant's intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing,

7

to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

The defendant understands and agrees that the defendant may not withdraw the defendant's guilty plea if, for any of the reasons listed above, the United States does not recommend that the defendant receive a reduction in the defendant's sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is under no obligation to reduce the offense level if it finds that the defendant has not accepted responsibility.

8.   Waiver of Trial Rights and Consequences of Plea.

The defendant understands that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant.   The defendant understands that the defendant has the right:

A.      to plead not guilty or to maintain that plea if it has already been made;

B.      to be tried by a jury and, at that trial, the right to the assistance of counsel;

C.      to confront and cross-examine witnesses against the defendant;

D.      not to be compelled to provide testimony that may incriminate the defendant; and

E.      to compulsory process for the attendance of witnesses to testify in the defendant's defense.

The defendant understands that by pleading guilty the defendant waives and gives up those rights and that if a plea of guilty is accepted by the Court, there will not be a trial of any kind.

The defendant understands that if the defendant pleads guilty, the Court may ask the defendant questions about the offense, and if the defendant answers those questions falsely under

oath, on the record, and in the presence of counsel, the defendant's answers may later be used

against the defendant in a prosecution for perjury or making false statements.

    9.   Acknowledgment of Guilt; Voluntariness of Plea.

The defendant acknowledges that the defendant:

A.    is entering into this Plea Agreement and is pleading guilty freely and voluntarily because the defendant is guilty;

B.    is entering into this Plea Agreement without reliance upon any discussions with the United States and without promise of benefit of any kind except as described in this Plea Agreement;

C.    is entering into this Plea Agreement without threats, force, intimidation, or coercion of any kind;

D.    understands the nature of the offense to which the defendant is pleading guilty, including the penalties provided by law; and

E.    is completely satisfied with the representation and advice received from the defendant's undersigned attorney.

    10.   Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the

undersigned parties and cannot bind any other non-federal, state or local authority.   The defendant

also acknowledges that no representations have been made to him about any civil or administrative

consequences that may result from the defendant's plea of guilty.   The defendant understands

such matters are solely within the discretion of the specific non-party government agency

involved.   The defendant further acknowledges that this Plea Agreement has been reached

without regard to any civil tax matters that may be pending or which may arise involving the

defendant.

    11.   Forfeiture.

Defendant Panos Eliopoulos agrees to forfeit to the United States immediately and

voluntarily, via the United States' civil forfeiture claim in *U.S. v. $695.00 in U.S. Currency,*

*more or less, seized from Phat Stuff, et al.,* Civil Docket No.14-294-PB, U.S.D.C., D.N.H.,

9

defendants *in rem* (2), (3), and (5), in their entirety, and also agrees to forfeit $566.00 from

defendant *in rem* (1).    The total amount to be forfeited is $10,729.59 from the total value of

defendants *in rem* (1) through (5), $20,729.59.    The defendant further agrees to forfeit

defendants *in rem* (6) through (29), in their entirety.    Upon the execution and filing of a

stipulated settlement agreement in the civil case, the United States will file a motion for the

dismissal and return of $10,000.00 to the defendant, comprising defendant *in rem* (4), and

$129.00 from defendant *in rem* (1).    This amount may be offset by any previously determined

debt owed to the United States, any agency of the United States, or any other debt in which the

United States is authorized to collect under the Treasury Offset Program.

None of the forfeitures set forth in this section shall be deemed to satisfy or offset any

fine, restitution, cost of imprisonment, or other penalty imposed upon the defendant, nor shall the

forfeitures be used to offset the defendant's tax liability or any other debt owed by the defendant

to the United States.

The defendant agrees to waive all constitutional, statutory, and any other challenges in

any manner, including, without limitation, by direct appeal and/or habeas corpus, to any

forfeiture carried out in accordance with this Plea Agreement on any grounds, including the

following: (1) the forfeiture constitutes an excessive fine or punishment under the Eighth

Amendment to the U.S. Constitution; (2) failure to comply with any and all requirements of Fed.

R. Crim. P. 11(b)(1)(J) pertaining to the Court's advice at the change of plea hearing; and, (3)

failure to comply with any and all requirements of Federal Rules of Criminal Procedure 32.2 and

43(a) regarding notice of the forfeiture in the charging instrument and announcement of the

forfeiture at sentencing and incorporation of the forfeiture in the judgment.    The defendant

further acknowledges that he understands that the forfeiture of assets is part of the sentence that

may be imposed in this case.

10

The defendant waives and releases any and all claims he may have to any property seized by the United States, or any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, whether forfeited or not.   The defendant agrees to hold the United States, its agents, and employees, and any state or local law enforcement agency participating in the investigation and prosecution of this case, harmless from any claims whatsoever in connection with the seizure and forfeiture, as well as the seizure, detention and return of any property in connection with the investigation and prosecution of this case.

The defendant acknowledges that all property to be forfeited under this section is subject to forfeiture as either proceeds of illegal conduct, or property facilitating illegal conduct.

12.   <u>Collateral Consequences</u>.

The defendant understands that the defendant will be adjudicated guilty of the offense to which the defendant will plead guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

13.   <u>Satisfaction of Federal Criminal Liability; Breach</u>.

The defendant's guilty plea, if accepted by the Court, will satisfy any federal criminal liability of the defendant in the District of New Hampshire as a result of the defendant's participation in the conduct which forms the basis of the Superseding Information in this case. The defendant understands that if, before sentencing, the defendant violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw from it.

11

14.   <u>Waivers</u>.

A.      Appeal

The defendant is aware that the defendant has the right to challenge the defendant's sentence and guilty plea on direct appeal.   By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.      The defendant's guilty plea and any other aspect of defendant's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and

2.      All aspects of the sentence imposed by the Court if that sentence is the stipulated sentence or within the stipulated sentencing range specified in section 6 of this agreement.

The defendant's waiver of rights does not operate to waive appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.      Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, <u>e.g.</u>, a motion under 28 U.S.C. § 2255 or § 2241.   By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.  The defendant's guilty plea and any other aspect of defendant's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and

12

2.   All aspects of the sentence imposed by the Court if that sentence is the stipulated

sentence or within the stipulated sentencing range specified in section 6 of this

agreement.

The defendant's waiver of the right to collateral review does not extend to claims

that the plea was unknowing or involuntary or to claims that the defendant received

ineffective assistance of counsel.   The defendant's waiver of his right to collateral

review also does not operate to waive a collateral challenge based on new legal principles

enunciated by the Supreme Court or First Circuit case law decided after the date of this

Plea Agreement that have retroactive effect.

C.      Freedom of Information and Privacy Acts.

The defendant hereby waives all rights, whether asserted directly or by a representative,

to request or receive from any department or agency of the United States any records pertaining

to the investigation or prosecution of this case, including without limitation any records that may

be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5

U.S.C. §522a.

D.      Appeal by the Government

This Plea Agreement does not affect the rights or obligations of the United States as set

forth in 18 U.S.C. § 3742(b), and the United States therefore retains its appeal rights.

15.   <u>No Other Promises</u>.

The defendant acknowledges that no other promises, agreements, or conditions have been

entered into other than those set forth in this Plea Agreement or revealed to the Court, and none

will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

13

16.   Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this

Plea Agreement is signed by the defendant and his attorney and until signed by the United States

Attorney for the District of New Hampshire, or an Assistant United States Attorney.

17.   Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this

Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and

void and no part of it may be enforced.


Dated: 3|10|16                                  EMILY GRAY RICE
                                                United States Attorney

                                        By:     _____

                                                Jennifer Cole Davis
                                                Assistant U.S. Attorney
                                                NH Bar Association # 10222
                                                53 Pleasant St., 4th Floor
                                                Concord, NH 03301
                                                jennifer.c.davis@usdoj.gov
                                                (603) 225-1552


        The defendant, Panos Eliopoulos, certifies that he has read this 13-page Plea Agreement
and that he fully understands and accepts the terms thereof.

_____                3|10|16
Panos Eliopoulos, defendant                    _____
                                               Date:


        I have read the above and explained it to my client, who advises me that he understands
and accepts its terms.

_____                March 10, 2016
Charles J. Keefe, Esquire,                     _____
Counsel for Panos Eliopoulos                   Date: